PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SHAWN F. ENGLE, a/k/a Shawn
Forrest Engle,

*Defendant-Appellant.*

No. 10-4850

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(2:09-cr-00070-RGD-FBS-1)

Argued: December 7, 2011

Decided: February 29, 2012

Before SHEDD, DIAZ, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Diaz and Judge Floyd joined.

## COUNSEL

**ARGUED:** Frances H. Pratt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Robert John Krask, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:**

Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, Richard J. Colgan, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, Katherine Lee Martin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

---

## OPINION

SHEDD, Circuit Judge:

A federal jury convicted Shawn Engle on one count of sexual exploitation of a minor (Count 1), *see* 18 U.S.C. § 2251(a); three counts of attempted enticement of a minor (Counts 6-8), *see* 18 U.S.C. § 2422(b); and nine counts of witness tampering (Counts 3-5 and 9-14), *see* 18 U.S.C. § 1512. The district court sentenced Engle to concurrent imprisonment terms of 360 months on the sexual exploitation count, 240 months on the witness tampering counts, and 480 months on the attempted enticement counts, and it placed him on supervised release for a term of life.[1]

On appeal, Engle seeks to set aside his conviction on Count 1, arguing that the district court erred by denying his pretrial motion to dismiss that count for improper venue. He also seeks to set aside his convictions on Counts 6-8, arguing that the court erred by denying his motion for judgment of acquittal based on insufficiency of evidence. Additionally, Engle contends that he is entitled to be resentenced because the court plainly erred by denying him the right to allocute before imposing sentence. Finding no merit to these contentions, we affirm.

---

[1]Engle was charged in Count 2 with possession of child pornography, but the district court dismissed that count at the government's request.

I

We begin with a brief overview of the relevant facts and criminal statutes. In 2008, Engle, who was then 30-years old, began communicating separately via internet and telephone with 17-year-old "A.M." and 13-year-old "K.M." At the time, Engle lived in Virginia, A.M. lived in Pennsylvania, and K.M. lived in South Carolina.

Engle communicated with A.M. for several weeks, during which time he sent her (among other things) naked photographs of himself. Engle twice traveled to Pennsylvania to visit A.M., and on the second visit, he used a video camera to record the two of them having sex. Engle and A.M. had no further physical contact after this encounter. The sexually explicit recording involving A.M. was later found by law enforcement officers in Virginia during a search of Engle's vehicle. As a result of this conduct, Engle was indicted in Count 1 for violating § 2251(a).

K.M. came from a troubled family environment, and Engle communicated with her over a longer period of time. Engle cultivated an emotional attachment between them, and he ultimately traveled to South Carolina, picked up K.M., and returned with her to Virginia. K.M. stayed with Engle for several weeks, and they had sexual relations during this time. Eventually, law enforcement arrested Engle, and he was charged with state-law crimes in Virginia and South Carolina. While he was incarcerated in Virginia pending trial, Engle communicated by mail and telephone with K.M. and her mother, "C.M.," in an effort to have them falsify evidence for him.[2]

---

[2]Four of these communications are the subject of the witness tampering charges underlying Counts 9-11 and 14. Engle also communicated with other witnesses, and those communications underlie the witness tampering charges in Counts 3-5 and 12-13.

Also while incarcerated, Engle had three communications (2 letters, one telephone call) with K.M. in which he expressed his love for her and his desire to reunite with her. In these communications, he made multiple references to their past sexual experience and to his desire to resume their sexual contact upon his release. Based on these communications, Engle was indicted in Counts 6-8 for violating § 2422(b).

Pertinent to this opinion, §§ 2422(b) and 2251(a) "proscribe related conduct," *United States v. Lee*, 603 F.3d 904, 913 (11th Cir. 2010), in that both statutes "aim to criminalize the enticement of a minor to engage in sexual activity," *United States v. Searcy*, 418 F.3d 1193, 1196-97 (11th Cir. 2005).[3] To obtain a conviction for enticement under § 2422(b), the government must prove that the defendant: (1) used a facility of interstate commerce; (2) to knowingly entice or attempt to entice any person under the age of 18; (3) to engage in illegal sexual activity. *United States v. Douglas*, 626 F.3d 161, 164 (2nd Cir. 2010), *cert. denied*, 131 S.Ct. 1024 (2011). Section 2422(b) "does not require that the sexual contact occur, but that the defendant sought to persuade the minor to engage in that conduct." *United States v. Barlow*, 568 F.3d 215, 219 n.10 (5th Cir. 2009).

To obtain a conviction for sexual exploitation of a minor (enticement) under § 2251(a), the government must prove that: (1) the defendant knowingly enticed a person under the age of 18; (2) to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and

---

[3]The terms "persuade," "induce," and "entice" appear in both statutes, but they are not statutorily defined. Being words of common usage, we accord them their ordinary meaning. *United States v. Broxmeyer*, 616 F.3d 120, 125 (2nd Cir. 2010). In ordinary usage, the words are effectively synonymous, and "the idea conveyed is of one person leading or moving another by persuasion or influence, as to some action [or] state of mind." *Id.* (citation omitted and internal punctuation altered). The specific definitions of these words are not at issue; therefore, we will refer to them interchangeably.

(3) that either the defendant knew or had reason to know that the visual depiction will be transported in interstate commerce, or that the visual depiction has actually been transported in interstate commerce. *United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009), *cert. denied*, 130 S.Ct. 1736 (2010). Section 2251(a) "plainly makes illegal the inducement of children into sexual conduct for the purpose of creating visual depictions of that conduct and transportation of the depictions across state lines." *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993) (citation and internal quotation marks omitted).

Sexual abuse of minors "can be accomplished by several means and is often carried out through a period of grooming." *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011). "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *Id.* Sections 2422(b) and 2251(a) "target[ ] the sexual grooming of minors as well as the actual sexual exploitation of them." *United States v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011).

II

With this background, we first consider Engle's argument that the district court erred by denying his pretrial motion to dismiss Count 1 based on improper venue. We review this issue *de novo*. *United States v. Wilson*, 262 F.3d 305, 320 (4th Cir. 2001).

A.

A federal criminal defendant is entitled to be tried in the State and district where the alleged crime was committed. *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI; Fed. R. Crim. P. 18. The federal venue requirement protects criminal

defendants "from the inconvenience and prejudice of prosecution in a far-flung district bearing no connection to their offenses." *United States v. Smith*, 452 F.3d 323, 334 (4th Cir. 2006).

Venue "is not a substantive element of a crime," *United States v. Griley*, 814 F.2d 967, 973 (4th Cir. 1987), but instead "is similar in nature to a jurisdictional element," *United States v. Johnson*, 510 F.3d 521, 527 (4th Cir. 2007). We have recognized that venue is a question of fact in which the burden of proof rests with the government, but unlike other facts in the government's case, it may be proven by mere preponderance of the evidence. *United States v. Burns*, 990 F.2d 1426, 1436 (4th Cir. 1993). Moreover, circumstantial evidence can be sufficient to establish proper venue. *Griley*, 814 F.2d at 973.

Venue is "ordinarily decided by the jury," *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1118 (10th Cir.), *cert. denied*, 132 S.Ct. 540 (2011), but a defendant must challenge venue before trial if the asserted venue defect is apparent on the face of the indictment, *United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004). Despite its constitutional dimension, proper venue may be waived by the defendant, *United States v. Ebersole*, 411 F.3d 517, 525 (4th Cir. 2005), and a failure to challenge a facially defective venue allegation constitutes a waiver, *Collins*, 372 F.3d at 633. However, "if an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of the evidence." *Id.* If the defendant raises such an objection, the district court must instruct the jury if "there is a genuine issue of material fact with regard to proper venue." *United States v. Perez*, 280 F.3d 318, 334 (3rd Cir. 2002); *see also Ebersole*, 411 F.3d at 526 n.10 ("Submitting the venue question to the jury is an appropriate procedure for resolving a factual dispute relating to venue.").

Although the venue rule "seems straightforward, the place of the crime can be difficult to determine." *United States v.*

*Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). When, as here, a defendant is charged with multiple criminal counts, venue must lie as to each count. *Id.* "If Congress does not explicitly provide for venue when it enacts a criminal statute, venue is to be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Ebersole*, 411 F.3d at 524 (citation and quotation marks omitted). "This assessment must focus on the 'essential conduct elements' of the charged offense," and is also "guided by the general venue provisions for federal criminal offenses, set forth in 18 U.S.C. §§ 3231–3244." *Id.* (citation omitted). Venue for a particular crime may be appropriate in more than one district, *Bowens*, 224 F.3d at 309, and "[w]here venue requirements are met, the prosecution may proceed in that district, notwithstanding the possibility that the gravamen of the wrongdoing took place elsewhere," *Smith*, 452 F.3d at 334. As we have explained, "[s]uch a rule is both even-handed and practical: there is no unfairness in prosecuting a defendant in a district in which he has committed a crime, and there are good reasons to avoid an indeterminate inquiry into the relative seriousness of multi-district misconduct." *Id.*

Of the aforementioned general venue provisions for federal criminal offenses, 18 U.S.C. § 3237(a) is pertinent to this case. Section 3237(a) is divided into two paragraphs. The first paragraph states, in relevant part, that any offense "begun in one district and completed in another, or committed in more than one district," may be prosecuted "in any district in which such offense was begun, continued, or completed." The second paragraph states, in relevant part, that any offense involving transportation in interstate commerce is a "continuing offense" and may be prosecuted "in any district from, through, or into which such commerce . . . moves."

B.

In Count 1, the government charged Engle with sexual exploitation of A.M. in violation of § 2251(a), which does not

contain a specific venue provision. The government alleged that on or about April 25-27, 2008, "in the Eastern District of Virginia and elsewhere," Engle "did knowingly use, persuade, induce, and entice [A.M.] to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct" when he "knew and had reason to know that such visual depiction would be, and later was, transported by him in interstate commerce into the Eastern District of Virginia" between April 27 and October 24, 2008, and "which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce." J.A. 16.

Pursuant to Federal Rule of Criminal Procedure 12, Engle moved before trial to dismiss Count 1, arguing that "[n]either the indictment, nor discovery materials received from the government, allege that any specific conduct prohibited by . . . § 2251(a), occurred in the Eastern District of Virginia." J.A. 33. Continuing, Engle asserted that "[a]ccording to the discovery materials" supplied by the government, the offense charged in Count 1 is based on his alleged conduct that occurred in Pennsylvania on or about April 25-27, 2008, and "[t]here appears to be no evidence of conduct within the Eastern District of Virginia, that would constitute a violation of . . . § 2251(a)." J.A. 34. Engle concluded by stating: "So far, the government has not shown by a preponderance of the evidence that venue is proper in the Eastern District of Virginia." J.A. 35.

The government argued in opposition that venue was proper because the indictment alleges that Engle transported the video from Pennsylvania to the Eastern District of Virginia, and his offense only became complete when he entered Virginia. For support, the government cited the second paragraph of § 3237(a), which (as noted) provides in part that any offense involving transportation in interstate commerce is a "continuing offense" that may be prosecuted in any district into which such commerce moves. The government also

pointed to our decision in *United States v. Reigle*, 228 F. App'x 353 (4th Cir. 2007), in which we found that venue was proper in the District of Maryland on two § 2251(a) crimes where the defendant had created illegal visual depictions in Pennsylvania that were later downloaded and discovered on a computer in Maryland.

At a pretrial hearing, Engle informed the district court that it could decide the motion on the written submissions. The court then denied the motion, holding that an offense under § 2251(a) is a continuing offense under § 3237(a) that can be prosecuted in any district into which the visual depiction moves. *United States v. Engle*, 677 F.Supp.2d 879, 886 (E.D. Va. 2009). The court noted that its determination is consistent with other § 2251(a) cases involving venue challenges, and it rejected Engle's attempt to distinguish our decision in *Reigle*.[4] Engle did not request that the issue of venue be submitted to the jury and did not assert in his motion for judgment of acquittal that the government failed at trial to prove proper venue.

Relying primarily on our decision in *Bowens*, Engle now contends that the district court erred in denying his pretrial venue motion because § 2251(a) contains only one essential conduct element which may be considered in determining venue — *i.e.*, the enticement of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction. He asserts that this conduct occurred only in Pennsylvania, and the court therefore improperly considered the "circumstantial element" of interstate transportation of the visual depiction in concluding that venue was proper in the Eastern District of Virginia.

In response, the government argues that the district court

---

[4]Apart from *Reigle*, the most notable case cited by the court is *United States v. Kapordelis*, 569 F.3d 1291 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 1315 (2010), which we discuss below.

correctly considered the interstate transportation element in determining that Count 1 involves a "continuing offense" under the second paragraph of § 3237(a). Additionally, the government argues that venue is proper in the Eastern District of Virginia under the first paragraph of § 3237(a) because the trial evidence establishes that Engle began the offense of enticing A.M. to engage in sexually explicit conduct for the purpose of creating a visual depiction in Virginia when he communicated with her online and by telephone. The government describes his communications with A.M. as "grooming." Regarding this latter argument, Engle replies that (1) we should not consider it because the government did not make it below and (2) the trial evidence does not establish that Engle began the offense in Virginia.

## C.

Notwithstanding the manner in which the parties have argued the venue issue throughout this case, it appears that the actual issue presented by Engle's motion to dismiss (and this appellate argument) is more limited than they contend. Engle clearly based his dismissal motion on the pretrial "evidence" that had thus far been produced. *See, e.g.*, J.A. 35 ("So far, the government has not shown by a preponderance of the evidence that venue is proper in the Eastern District of Virginia."). However, because Engle moved under Rule 12 to dismiss Count 1 before trial, his motion was a challenge to the sufficiency of the indictment, which is ordinarily limited to the allegations contained in the indictment. *See, e.g.*, *United States v. Wills*, 346 F.3d 476, 488 (4th Cir. 2003) (noting that "courts lack authority to review the sufficiency of evidence supporting an indictment").[5]

---

[5]We may affirm on any ground appearing in the record, including theories not relied upon by the district court. *Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003). Moreover, we are not bound by the parties' characterization of the legal principles, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991), and we have recast appellate arguments in the past to

A district court may dismiss an indictment under Rule 12 "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) (citation and internal quotation marks omitted); *see also United States v. Jensen*, 93 F.3d 667 (9th Cir. 1996) (holding that the district court erred by looking beyond the allegations of the indictment to grant a Rule 12(b) dismissal motion for improper venue).[6] Therefore, to warrant dismissal of Count 1 for improper venue, Engle was required to demonstrate that the allegations therein, even if true, would not establish venue. *See United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004).

As we have noted, the government alleged (in part) that on or about April 25-27, 2008, "in the Eastern District of Virginia and elsewhere," Engle knowingly enticed A.M. to engage in sexually explicit conduct with him for the purpose of producing a visual depiction of that conduct. Based on these allegations, which clearly designate "the Eastern District of Virginia and elsewhere" as the location of Engle's illegal acts, his pretrial motion to dismiss Count 1 on venue grounds should have been denied. *See generally United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2011) (noting that "an indictment is legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable

more accurately reflect their nature, *see, e.g.*, *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004) ("In light of the nature of Thomas' argument, we are inclined to treat it as a challenge to the adequacy of the factual basis supporting his plea even though he has not explicitly framed it as such.").

[6]Citing *Jensen*, we stated in *United States v. Forrest*, 1999 WL 436743 (4th Cir. 1999): "When the motion to dismiss for improper venue is a pretrial motion, only the indictment may be considered. Evidence beyond the face of the indictment should not be considered."

the accused to plead an acquittal or conviction to bar a future prosecution for the same offense.").[7]

### D.

We do not rest our decision solely on the foregoing rationale. Instead, even if we review the parties' actual arguments, we conclude that venue was proper in the Eastern District of Virginia under both paragraphs of § 3237(a).

### 1.

First, as to the legal issue decided by the district court, we agree with the court that venue is proper in the Eastern District of Virginia under the second paragraph of § 3237(a) because the charge against Engle is a "continuing offense." In so holding, we find the Eleventh Circuit's decision in *Kapordelis* to be persuasive.

In *Kapordelis*, the defendant created sexually explicit photographs of a child while he was in Greece and South Carolina, and the photographs were later discovered in his possession in Georgia. The defendant moved to dismiss the § 2251(a) counts against him, arguing that venue was improper in Georgia because the production of the images did not occur there. The district court denied the motion, and the Eleventh Circuit affirmed, explaining:

> Section 2251(a) includes among its required elements . . . (1) that the defendant must know or have reason to know that "such visual depiction will be

---

[7]A district court "may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." *United States v. Weaver*, 659 F.3d 353, 356 n.* (4th Cir. 2011). *Weaver* is inapplicable here because the government did not proffer or stipulate to the pertinent facts below, and as we later explain, some of the relevant venue facts were developed only at trial.

transported in interstate or foreign commerce or mailed," (2) that the "visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce," or (3) that the "visual depiction has actually been transported in interstate or foreign commerce or mailed." Count 1 alleges that the digital photographs were transported from Greece to Georgia and Count 3 alleges that the digital photographs were transported from South Carolina to Georgia and created using a camera that had been "mailed, transported and shipped in interstate and foreign commerce."

While neither the transportation of an image allegedly produced in violation of § 2251(a) from another jurisdiction nor the possession of such an image in the Northern District of Georgia changes the location of the "use" or "production" elements from Greece or South Carolina, as Defendant argues, § 2251(a) ties the punishment for the "use" of a minor in and "production" of visual depictions of sexually explicit conduct to the transport of the visual depictions or the means of producing those visual depictions in interstate or foreign commerce. Thus, under 18 U.S.C. § 3237, the violation of § 2251(a) as alleged in Counts 1 and 3 is a "continuing offense." Venue in the Northern District of Georgia into which the images (and the camera, in the case of Count 3) moved, was appropriate, and the decision of the district court shall be affirmed.

569 F.3d at 1307-08. *Kapordelis* is indistinguishable from this case, and we find its reasoning to be applicable here.

We disagree with Engle that *Bowens* compels a different result. The venue issue in *Bowens* arose from a prosecution in the Eastern District of Virginia under 18 U.S.C. § 1071 for illegally harboring a fugitive from arrest. In prosecutions

under § 1071, the issuance of a federal arrest warrant is an essential element. *Bowens*, 224 F.3d at 309. The federal arrest warrants in that case were issued in Virginia, but the defendant's only acts of harboring the fugitive occurred in South Carolina. Based on these facts, the defendant requested a jury instruction on venue, but the district court denied the request, ruling that the issuance of the arrest warrants in Virginia was sufficient for venue to lie there. Because we held that the only essential conduct element of the § 1071 prosecution was the act of harboring the fugitive, we concluded that venue was improper in Virginia. 224 F.3d at 311.

*Bowens* did not involve § 3237(a), which governs venue for interstate transportation cases such as this one.[8] Moreover, in the context of prosecutions under §§ 1071 and 2251(a) — and the conduct which Congress sought to prevent — the act of transporting child pornography across state lines is fundamentally different than the location of the issuance of an arrest warrant, which is nothing more than a happenstance fact. *See, e.g.*, *United States v. Schaffner*, 258 F.3d 675, 683 (7th Cir. 2001) ("The actual movement of the photograph across state lines directly implicates interstate commerce and the legitimate congressional concern that this evil not be spread or encouraged through the use of the channels of interstate commerce.").

---

[8]An analogous case is *United States v. Melia*, 741 F.2d 70 (4th Cir. 1984) (per curiam). There, the defendant was convicted in the Eastern District of North Carolina under 18 U.S.C. § 2315 for receiving goods which had crossed state lines after being stolen. The goods were stolen in North Carolina, but because the defendant's conduct occurred only in Connecticut, where the goods were delivered, he argued improper venue, "insist[-ing] that the receipt of stolen goods is a single act and the crime must be prosecuted where the receipt occurs. . . ." 741 F.2d at 72. In essence, he argued that the essential conduct element of the crime occurred in Connecticut, and the circumstance element of interstate transportation was irrelevant. We rejected this argument, finding that § 3237(a) "was enacted . . . to deal precisely with this interstate 'process of wrongdoing.'" *Id.*

2.

Second, as a factual matter, we conclude that venue is also proper under the first paragraph of § 3237(a), which provides that any offense "begun in one district and completed in another, or committed in more than one district," may be prosecuted "in any district in which such offense was begun, continued, or completed." As noted, Count 1 charges (in part) that Engle knowingly enticed A.M. to engage in sexually explicit conduct for the purpose of making a visual depiction. Regardless of the fact that Engle ultimately created the video in Pennsylvania, the charged crime of enticement — *i.e.*, Engle's effort to persuade A.M. — clearly began before he recorded the sexual activity with A.M. *See United States v. Buculei*, 262 F.3d 322, 328 (4th Cir. 2001) (holding that enticement under § 2251(a) can occur even if the defendant is unsuccessful in his attempt to produce the visual depiction).

The question, therefore, is whether the government presented sufficient direct or circumstantial evidence at trial to prove by a preponderance of the evidence that Engle committed an act in the Eastern District of Virginia that enticed A.M. to engage in sexually explicit conduct for the purpose of making the video-recording. To answer this question, we view the evidence in the light most favorable to the government, *Burns*, 990 F.2d at 1437, and we recognize that the jury may infer intent from circumstantial evidence, *United States v. Lowder*, 492 F.2d 953, 957 (4th Cir. 1974).

At trial, the government presented evidence that in April 2008, Engle met A.M. in an internet chatroom. During their initial conversations, A.M. informed the 30-year-old Engle that she was only 17. Nonetheless, Engle's conversations quickly became sexual in nature, and he sent her "[s]exual pictures where he was naked." J.A. 597. Engle eventually traveled to Pennsylvania to see A.M. on April 16, 2008, and he picked her up at her high school and took her to a motel.

There, Engle and A.M. talked, drank alcohol, and kissed, but they did not engage in sexual intercourse.

Nine days later, Engle returned to see A.M. Engle again picked A.M. up from high school, and this time he rented a motel "honeymoon suite" that included a hot tub. Engle provided alcohol and gifts to A.M., and after she became intoxicated, he recorded the two of them engaging in sexual intercourse. Engle brought the recording back to Virginia. After this incident, A.M. refused Engle's request to meet again.

Unquestionably, much of the pre-recording activity occurred in Pennsylvania. Moreover, there is no evidence that Engle directly informed A.M. from Virginia of his intent or desire to videotape or photograph her engaging in sexually explicit conduct. However, viewing the evidence presented at trial in the light most favorable to the government, we believe that a jury could reasonably find by a preponderance of the evidence that Engle's sexually themed communications with A.M., and especially his sending naked pictures of himself to her, were part of his effort to "groom" her for that purpose, which is sufficient to establish enticement under § 2251(a).[9] *See generally United States v. Dorvee*, 616 F.3d 174, 180 (2nd Cir. 2010) (holding that the district court's factual finding for sentencing purposes that the defendant sent images as part of a grooming process to persuade a minor to engage in

---

[9]A defendant can violate § 2251(a) in multiple ways, and the evidence is sufficient here to establish that Engle violated the statute in at least two ways: "using" A.M. and "enticing" A.M. *See United States v. McCloud*, 590 F.3d 560, 566 (8th Cir. 2009), *cert. denied*, 131 S.Ct. 72 (2010) ("A defendant 'uses' a minor for purposes of § 2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct."); *Harms v. United States*, 272 F.2d 478, 480 (4th Cir. 1959) (evidence that a female traveled across state lines to engage in prostitution in response to the defendant's call asking her to do so is sufficient to sustain the finding that the defendant "induced or persuaded" the female to make the trip in violation of § 2422).

the type of sexual conduct depicted in the images was not clearly erroneous); *Lee*, 603 F.3d at 915 ("Much of Lee's conduct — especially his sending graphic photographs to the girls . . . — also supports a finding that he groomed the girls in an effort to facilitate a future sexual encounter."); *United States v. Brand*, 467 F.3d 179, 203 (2nd Cir. 2006) (holding that the defendant's "sexual advances and grooming behavior provide additional evidence in support of the jury's finding that [he] attempted to entice a minor"). Because Engle conducted at least some of this activity from the Eastern District of Virginia, his claim of improper venue is without merit.[10]

### III

Having disposed of Engle's challenge to venue on Count 1, we next turn to his contention that the evidence is insufficient to support his convictions on Counts 6-8. We review his challenge to the sufficiency of the evidence *de novo*, *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005), and we must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it, *Burks v. United States*, 437 U.S. 1, 17 (1978). Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of guilt beyond a reasonable doubt. *Alerre*, 430 F.3d at 693. A defendant bringing a sufficiency challenge "must overcome a heavy burden," *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995), and reversal for insufficiency must "be confined to

---

[10]We reject Engle's contention that we should not consider this argument because it was not raised below. Engle did not challenge venue at trial, so there was no reason for the government to address the issue at that time. Notably, although Engle now chides the government for not raising venue at trial, the government had no obligation to do so. *See Reply Brief of the Appellant*, at 7 n.1 ("Though it was obvious that venue would be an issue on appeal, the government did not request a special verdict on this issue, so there is no way of knowing which [§ 2251(a)] jurisdictional basis the jury found.").

cases where the prosecution's failure is clear," *Burks*, 437 U.S. at 17.

### A.

Pursuant to Counts 6-8, Engle was convicted under § 2422(b) for attempted enticement of K.M. Section 2422(b) "was designed to protect children from the act of solicitation itself," *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011), *cert. denied*, 131 S.Ct. 2975 (2011), and it "criminalizes an intentional attempt to achieve a *mental* state — a minor's assent — regardless of the accused's intentions [concerning] the actual consummation of sexual activities with the minor," *United States v. Berk*, 652 F.3d 132, 140 (1st Cir. 2011) (emphasis in original) (citation and internal quotation marks omitted). Although "it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice [in § 2422(b)] to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves." *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000).

"An attempt to commit a crime, which is recognized as a crime distinct from the crime intended by the attempt, punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance." *United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003). The "mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007). Therefore, in order to convict a defendant of attempt, the government must prove beyond a reasonable doubt, that (1) he had culpable intent to commit the crime and (2) he took a substantial step towards completion of the crime that strongly corroborates that intent. *United States v. Neal*, 78 F.3d 901,

906 (4th Cir. 1996). The government may meet its burden of proof by using direct or circumstantial evidence. *United States v. Figueroa*, 976 F.2d 1446, 1459 (1st Cir. 1992). Factual impossibility is not a defense to a charge of attempt. *United States v. Williams*, 553 U.S. 285, 300 (2008).

B.

The evidence relating to Counts 6-8 tends to establish that Engle met 13-year-old K.M. over the internet in early 2008. During that summer, Engle continued to communicate with K.M., expressing his love for her and his desire to engage in sexual activity with her. Engle and K.M. referred to each other as "Superman" and "Supergirl," and as "Bonnie" and "Clyde."

K.M. came from a troubled family environment, and Engle sought to exploit this fact in communicating with her. For example, in a series of mid-August text messages, Engle promised K.M. that he would always keep her safe and take care of her if she came to live with him. In late August, Engle drove from Virginia to South Carolina, where he met K.M. Engle returned to Virginia the next day.

A few days later, Engle returned to South Carolina at K.M.'s request and took her to Virginia Beach, Virginia, where they stayed with some of Engle's acquaintances for approximately two weeks. During this time, K.M.'s father reported her missing. Jim Perry, an investigator with the Greenville County, South Carolina, Sheriff's Office, found K.M.'s cellphone and discovered some of the messages that Engle had sent her. Investigator Perry contacted Engle concerning K.M.'s whereabouts, but Engle denied knowing where she was. When asked for his address for a follow-up interview, Engle provided a false address.

Engle later drove K.M. to his mother's home in North Carolina. In mid-September 2008, Sergeant Randy Hathaway of

the Gates County, North Carolina, Sheriff's Department drove to Engle's mother's home to search for K.M. Sergeant Hathaway found both K.M. and Engle inside. Sergeant Hathaway removed K.M. from the location, but he did not arrest Engle. While they were together, Engle had engaged in sexual relations with K.M.

After recovering K.M., the Gates County Sheriff's Office obtained a warrant for Engle's arrest, but Engle left the area before he could be arrested. Upon learning that K.M. had been with Engle, officials in South Carolina charged him with kidnapping. Engle was arrested on October 24, 2008, in Virginia Beach and was charged with having carnal knowledge of K.M. During a search of his vehicle incident to the arrest, law enforcement officers found the sexually explicit video-recording of Engle and A.M.

Shortly after his arrest, and while he was incarcerated in Virginia, Engle began contacting K.M. and her mother, C.M., by mail and by telephone. Generally, in these communications, Engle attempted to obtain false statements from K.M. and C.M., asking them to say, for example, that he had done nothing illegal with K.M., that K.M. was never in Virginia, that K.M. had parental permission to be with him, and that Investigator Perry had forced K.M. to make a false statement. Eventually, Engle convinced K.M. to write and sign two false statements indicating that South Carolina investigators forced her to sign a false statement, that she never had sexual relations with Engle, and that she had never been to Virginia Beach. Engle's mother provided copies of both statements to the FBI. Engle also expressed his love for K.M., and his desire to reunite with her and to engage in sexual activity with her. As he told her in one telephone call: "[A]ll my energy is going to [getting out] and getting back with you." J.A. 015B-007.

Count 6 is based on a lengthy letter Engle sent to K.M. on

December 22, 2008.[11] This letter begins with the salutation "Dear Supergirl" and contains several drawings, including a heart with "Bonnie & Clyde" written inside. It is also replete with Engle's professions of love for K.M., and his desire to be with her soon and to marry her. To that end, Engle discussed actions that K.M. needed to take to ensure that the Virginia and South Carolina charges against him would be dropped before an upcoming hearing. In one part of the letter, Engle told K.M. that if the charges were dropped by the hearing:

> I will be released and go free and be able to just come down right away and be back together with you. All I want is to be back with you as soon as possible, I love you so much. I miss holding, kissing, loving you, just being with you.

J.A. 013A-007.

Engle also made several overtly sexual statements in this letter. For example, Engle wrote:

> I miss shaving someone I know ☺ remember, baby soft smooth, and love to lick that and kiss. Yeppers! . . . God I miss that, and every part of you.
>
> * * *
>
> [J]ust so you know, I haven't done anything since us together, none of your favorite thing you loved to listen to me do, nothing. Unexploded for what, 3 months now. So yeah, when I'm back with you know, its gonna be like, just wow, incredible!! . . . I think you know what I mean though.

---

[11]Because of the length of the communications underlying Counts 6-8, we do not attempt to provide a complete description of them.

\* \* \*

I want to Kiss and Lick you all over!

J.A. 013A-005, -008, -010.

Count 7 is based on two telephone calls that Engle made on December 29, 2008. During the first call, Engle spoke with C.M., who warned him that when he got to South Carolina he should not expect sex for a month so that K.M. could start birth control. J.A. 016B-006. After this call ended, Engle called and spoke with K.M, telling her (among other things) that he was going to be released from jail soon, and that he would not be able to wait a month to have sex with her:

> Engle: I love my girl so it looks like, I'm hoping, I'm gonna be back with you pretty soon. Alright?
>
> K.M.: Yeah.
>
> Engle: Yeah and I guess your um, something about BC for a month or something saying. Did you hear me?
>
> K.M.: Huh?
>
> Engle: She was saying something about BC for a month.
>
> K.M.: Yeah.
>
> Engle: Yeah [laugh] you gonna be able to do that?
>
> K.M.: mm
>
> Engle: Huh? [laugh]
>
> K.M.: Aaah.

Engle: [laugh] I don't [think] I can for real [laugh].

K.M.: No.

Engle: Just keep it between us.

K.M.: Yeah.

Engle: You know what I mean. Cuz like I don't even think I'd make it [laugh] I wouldn't even make it out of the parking lot [laugh]. You know what I mean?

K.M.: Yeah.

Engle: You feeling that too? Huh.

* * *

K.M.: Yeah.

Engle: [laugh] You're a mess. Nobody will know except me and you, right?

K.M.: A huh.

Engle: I love you.

K.M.: You too.

* * *

Engle: Don't worry about the waiting a month thing like that okay?

K.M.: Okay.

J.A. 016B-011 through -013.

Engle also discussed with K.M. how long it had been since they had had sex, and he told her that when they got back together "[i]t's gonna be like the first time." J.A. 016B-016. Additionally, Engle encouraged K.M. to masturbate while he listened over the phone, commenting: "Isn't it better with me doing that?" J.A. 016B-013 through -015.

Count 8 is based on a lengthy letter that Engle sent to K.M. on December 30, 2008. Like the December 22 letter, this letter begins with the salutation "Dear Supergirl," and it also contains numerous professions of Engle's love for K.M. (both in writing and in drawings) and his belief that they will be together soon. Among other things, Engle referred to his prospective living arrangements in South Carolina, writing: "So you cleared out a lot of stuff in the room for my bed. Yeah, I'm not seeing me sleeping alone when I'm there. You won't let that happen." J.A. 014A-007. Engle told K.M. that he missed "being up with you all night, holding, kissing, and loving you." J.A. 014A-008.

Engle also made overtly sexual statements in this letter. For example, he wrote:

> I'm trying really hard not to explode wink wink until I'm out of here and back with you. Its driving me nuts, but i'm gonna do it, be able to hold out until I'm back with you. Cause that moment is going to be like, O.M.F.G. incredible. You know that, and I know you're like waiting, wishing, and wanting that moment to cum ☺ soon.

J.A. 014A-009. In another passage, Engle referred to K.M. masturbating while she was on the phone with him:

> Talking to you every night on the phone, ☺ makes it a lot better, hearing your voice, what you're doing when you hear mine, yeah, know my girl well. Loving that by the way, wish I could join you in doing that, but I'd end up with a new charge against me. L.O.L. No privacy thing here you know. I remember doing that for you, . . . with parts of me. God I love you, every part of you! Every part! You are the sexiest, hottest, most loving, perfect, beautiful girl in the universe and all eternity!

J.A. 014A-004.

## C.

Engle's argument regarding the sufficiency of the evidence is limited to one element of the charged crimes. He contends that his communications with K.M. were "mere expressions of affection and sexual desire," *Brief of Appellant*, at 43, and that because he was incarcerated with no realistic probability of being released when he communicated with K.M., the evidence is insufficient to establish that he took a substantial step towards enticing her to engage in illegal sexual activity. We disagree.

For purposes of the crime of attempt, a substantial step is a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose. *Pratt*, 351 F.3d at 135. It "is more than mere preparation but less . . . than completion of the crime." *Neal*, 78 F.3d at 906. "Whether conduct represents a substantial step depends on the 'surrounding factual circumstances;'" and the determination is "necessarily fact specific." *Id.* In determining whether a defendant has taken a substantial step, "the focus is on the actions already taken to complete the underlying crime, *not* on the acts that remain uncompleted,"

*United States v. Sanchez*, 615 F.3d 836, 844 (7th Cir. 2010) (emphasis in original), and "a court must assess how probable it would have been that the crime would have been committed — at least as perceived by the defendant — had intervening circumstances not occurred," *Pratt*, 351 F.3d at 136.

Although "words and discussions would usually be considered preparations for most crimes, a specific discussion could be so final in nature that it left little doubt that a crime was intended and would be committed." *Id.* This rule has particular force in prosecutions under § 2422(b) because "the very nature of the underlying offense — persuading, inducing or enticing engagement in unlawful sexual activity — necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense. . . ." *United States v. Rothenberg*, 610 F.3d 621, 627 (11th Cir. 2010). Therefore, "an individual evaluation by the fact finder of the defendant's intent as disclosed by his words or speech is necessary in [almost] every prosecution under § 2422(b)." *Id.*

Based on the foregoing authorities, we easily conclude that substantial evidence exists to support Engle's convictions on Counts 6-8. In the communications that are the subject of these counts, Engle communicated with K.M. and C.M. in specific terms regarding his expected release from jail, his immediate plan to reunite with K.M., and his desired living arrangement in their house. Moreover, Engle referenced his past sexual activity with K.M. in graphic terms, and he unequivocally stated his intention to resume sexual activity with her as soon as he was released. Engle's intentions are corroborated by his discussion with C.M. and K.M. as to whether he would have to refrain from engaging in sexual activity with K.M. until she was on birth control. Additionally, Engle attempted to procure false testimony from K.M. and others in an effort to be released, and he persuaded K.M. to file two false statements on his behalf.

Taken as a whole, this evidence is more than sufficient to constitute a substantial step for the crime of attempted enticement under § 2422(b). *See, e.g.*, *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007) ("[W]hen a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward [enticing] a minor to engage in unlawful sexual activity."); *see also United States v. Broussard*, ___ F.3d ___, ___ (5th Cir. 2012) (2012 WL 309102) (noting that "the prohibited act of persuasion can occur over a distance, as the statute expressly contemplates, and logic would appear to dictate that having discussions with [minors] about meeting to have sex is a substantial step toward persuading them to have sex").[12]

IV

Finally, we consider Engle's argument that the district court erred by denying him the right of a meaningful allocution before pronouncing sentence. Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) requires that before imposing sentence the district court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."

Engle acknowledges that his failure to object at sentencing subjects this issue to plain-error review. *See United States v. Muhammad*, 478 F.3d 247, 249 (4th Cir. 2007) (applying plain-error review on denial of allocution claim). Under Rule 52(b) of the Federal Rules of Criminal Procedure, "[a] plain error that affects substantial rights may be considered even

---

[12]That Engle was incarcerated does not change the result. He was not convicted of attempting to engage in sexual relations with K.M. Rather, he was convicted of attempted enticement, "for which physical proximity can be probative but is not required." *Goetzke*, 494 F.3d at 1236 (rejecting argument that the defendant could not have violated § 2422(b) because he was not in a position to have physical contact with the minor).

though it was not brought to the [district] court's attention." Interpreting Rule 52(b), the Supreme Court has instructed:

> [A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, ___ U.S. ___, ___, 130 S.Ct. 2159, 2164 (2010) (internal punctuation and citation omitted). "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it," *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004), and "[m]eeting all four prongs is difficult, as it should be," *Puckett v. United States*, 556 U.S. 129, 129 S.Ct. 1423, 1429 (2009) (internal punctuation and citation omitted). We conclude that Engle has failed to establish entitlement to plain-error relief.

At the beginning of the sentencing hearing, the district court informed Engle that he had "a right to present a sworn or an unsworn statement before sentence is imposed." J.A. 951. During the hearing, the court heard testimony from several witnesses, reviewed evidence presented by the parties, and resolved numerous factual and legal objections to the presentence report, including sustaining three of Engle's objections. After calculating the advisory sentencing guidelines range to be 262-327 months, the court denied Engle's motion for a downward variance and granted the government's motion for an upward variance. In doing so, the court explained:

> This sentence guideline range may have been adequate if, one, we didn't have the prior record that this

defendant has, and, two, if we didn't have the ques-
tion of protecting the public from further crimes this
defendant might commit because of his propensity to
desire what he describes as a — and I quote — "re-
venge."

\* \* \*

The government indicates that if we go up three
points we'll get to a sentence of 360 years to life.
Then the government says, okay, they want 480
months. The defendant will probably be, taking time
off for good behavior, close to 70 by the time he
would get out, at 480 months. I think that 480
months will reasonably protect society in this case
from further crimes this defendant might commit. I
don't think anything less would do it. I just don't. I
don't believe it, and that's why I would arrive at that
which I think would be a reasonable sentence under
the circumstances.

J.A. 1085-86.[13]

Immediately thereafter, the court afforded Engle the oppor-
tunity "to make a sworn or an unsworn statement before sen-
tence is imposed." J.A. 1087. Engle accepted the judge's offer
and briefly addressed the court, asserting that he wanted men-
tal health treatment and that he had made "some bad mistakes,
some bad decisions" but he was "not a bad person." J.A.
1087-88. Engle also apologized for some of his actions and
asked the court to give him "a chance." J.A. 1089. Following
Engle's statement, the court announced the sentence. Subse-

---

[13]In addition to the conduct for which he was convicted, Engle made a
number of threatening phone calls regarding law enforcement officers,
government prosecutors, and their family members while he was incarcer-
ated in Virginia, and he also attempted to arrange to have one witness
killed.

quently, the court filed a lengthy Statement of Reasons explaining the bases for the sentence. In the conclusion paragraph of the Statement of Reasons, the court summarized its rationale:

> Based on the nature and circumstances of Defendant's serious offenses, his history of violent crime and sex offenses, his mental problems, and the factors set forth in [18 U.S.C.] § 3553(a)(2), the Court concludes that a sentence of 480 months of imprisonment and a term of supervised release of life is sufficient, but not greater than necessary, to satisfy the purposes set forth in 18 U.S.C. § 3553.

J.A. 1221.

This record makes it abundantly clear that Engle was afforded the opportunity to address the court before final sentence was imposed, and he in fact utilized that opportunity. However, Engle argues that when the district court announced its intention to vary upward to 480 months, it effectively imposed the sentence, and his opportunity to address the court thereafter was meaningless. We disagree.

Rule 32 only requires the district court to address the defendant personally and permit him to speak or present any information to mitigate the sentence before sentence is imposed; apart from that requirement, the rule does not create a right of allocution at any specific point in the sentencing proceeding. *United States v. Aquilla*, 976 F.2d 1044, 1054 (7th Cir. 1992). Moreover, "[w]hen a judge announces a sentence before hearing an allocution, it is fair to assume that such a sentence is tentative and that the judge will consider the defendant's statements before imposing a final sentence." *United States v. Burgos-Andujar*, 275 F.3d 23, 30 (1st Cir. 2001); *see also United States v. Boose*, 403 F.3d 1016 (8th Cir. 2005) (finding no Rule 32 error where district court announced a tentative

sentence before permitting allocution); *United States v. Laverne*, 963 F.2d 235 (9th Cir. 1992) (same).

Here, there is simply nothing improper about the fact that the district court resolved the parties' variance requests and stated that 480 months seemed to be an appropriate sentence before Engle's allocution, and there is likewise nothing in the record to establish that the court did not consider Engle's comments before finally imposing sentence. Accordingly, we believe that Engle has failed to meet his initial plain-error burden of showing a "clear or obvious" error.

V

Based on the foregoing, we affirm the Judgment of Conviction.

*AFFIRMED*