**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4742**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAMES MARTIN TREACY,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, District Judge.  (5:13-cr-00018-MFU-1)

Argued:  December 8, 2016          Decided:  February 7, 2017

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Shedd wrote the opinion, in which Judge Wilkinson and Judge Duncan joined.

**ARGUED**:  Louis Kirk Nagy, LAW OFFICE OF LOUIS K. NAGY, Harrisonburg, Virginia, for Appellant.  Elizabeth G. Wright, OFFICE OF THE UNITED STATES ATTORNEY, Harrisonburg, Virginia, for Appellee.  **ON BRIEF:** John P. Fishwick, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

James Martin Treacy used his deceased ex-wife's social security number to receive social security survivors' benefits. Alleging this use to be illegal, the United States indicted Treacy for concealment of a material fact from the government (Count 1); theft of government money (Count 2); social security fraud (Count 4); and aggravated identity theft (Counts 3 and 5).[1] Before trial, Treacy moved to dismiss Counts 1, 3, and 5 on statute of limitations grounds. The district court dismissed Count 1, but it declined to dismiss Counts 3 and 5 based on its conclusion that aggravated identity theft is a continuing offense. Subsequently, a jury convicted Treacy on Counts 2-5, and he now appeals his convictions on Counts 3 and 5. For the reasons that follow, we affirm.

I

The United States filed the Indictment on August 1, 2013. The parties agree that under 18 U.S.C. § 3282(a) the applicable statute of limitations for the charged crimes is five years.

As the Indictment explains, the Social Security Administration ("SSA") administers payment of federal benefits under various programs to qualifying individuals, including

---

[1] See 18 U.S.C. § 1001 (Count 1); 18 U.S.C. § 641 (Count 2); 42 U.S.C. § 408(a)(4) (Count 4); and 18 U.S.C. § 1028A(a)(1) (Counts 3 and 5).

certain surviving family members of individuals who had worked and were insured under the Social Security Act. Payments to those surviving family members are based on contributions from the deceased individual's earnings. Widowers and surviving divorced husbands may be entitled to survivors' benefits on behalf of deceased wives under certain circumstances. Among these circumstances are that a widower must have been married to the deceased wife at the time of her death, and a surviving divorced husband must have been married to the deceased wife for a period of ten years immediately before the divorce became effective. See J.A. 13-14.

The United States alleges in the Indictment that on or about January 23, 2006, Treacy applied for survivors' benefits on behalf of his deceased ex-wife ("K.G.") using her name and social security number. Treacy indicated on the application that he and K.G. were married from November 19, 1965, until April 1, 1984,[2] when she died. Treacy also indicated that he was "last married" to K.G. However, contrary to Treacy's representations, he divorced K.G. in October 1973 and, therefore, was actually married to her for less than 8 years. Moreover, Treacy was not married to K.G. at the time of her death. Instead, Treacy was married to another person when K.G. died. In November 2011, the

---

[2] This date was subsequently amended to October 4, 1986.

3

SSA learned the truth about Treacy's marriage to K.G. and suspended benefits payments to him. By that time, the SSA had paid Treacy over $109,000 in survivors' benefits.

Counts 3 and 5 charge Treacy with aggravated identity theft under § 1028A(a)(1), which "provides an enhanced penalty for those who unlawfully use another's identifying information during and in relation to a broad array of predicate offenses." United States v. Abdelshafi, 592 F.3d 602, 609 (4th Cir. 2010). To establish a violation of § 1028A(a)(1), the government "must prove the defendant (1) knowingly transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of another person, (4) during and in relation to a predicate felony offense." Id. at 607. Count 2 (theft of government money) is the predicate felony offense for Count 3, and Count 4 (social security fraud) is the predicate felony offense for Count 5. Each of these counts charges Treacy with committing the crimes "[b]etween on or about January 23, 2006, and on or about November 17, 2011." See J.A. 15-17.

In moving to dismiss Counts 3 and 5 before trial, Treacy asserted that he committed aggravated identity theft – if at all – only in January 2006, when he used K.G.'s social security number to apply for benefits. Treacy acknowledged in his motion that if he had "at a later time and within the five year statute of limitations, used or provided the social security number

4

again then the statute of limitations could [begin] running at that point." J.A. 30. He noted, however, that "this evidently did not occur. It appears that the affirmative act of providing the social security number only occurred in 2006." Id. Based on his recitation of the facts, which at the pretrial stage had yet to be established, Treacy thus contended that the five-year limitations period expired in January 2011, over two years before the government filed the indictment. Treacy did not simply rest on his factual assertion that he only used K.G.'s social security number once. Instead, he explained that the pertinent legal question is whether the crime of aggravated identity theft is a continuing offense for statute of limitations purposes,[3] and he argued that the question must be answered in the negative.

With the continuing offense issue at play, the United States disputed Treacy's legal argument. In doing so, the United States asserted that the aggravated identity theft charges are not time-barred in any event because Treacy's transfer, possession, and/or use of K.G.'s social security number "was repeated and continuing within five years of the date of the

---

[3] See, e.g., United States v. Perry, 757 F.3d 166, 173 (4th Cir. 2014) (noting that "statutes of limitations normally begin to run when the crime is complete," but that criminal acts over an extended period "may be treated as a continuing offense for limitations purposes" in certain circumstances).

5

Indictment." J.A. 49. The United States explained that each of the payments the SSA made to Treacy was under K.G.'s account and displayed her social security number and, therefore, "[w]ith the deposit of each payment into his bank account, [Treacy] both committed a new instance in his course of conduct of theft of government funds . . . and a new violation of . . . § 1028A by transferring, possessing, and/or using her social security number without lawful authority." J.A. 49 (emphasis in original). The United States further noted "the language of the Indictment itself makes clear, [that] the timeframes of these violations extended well into the last five years, being from '[b]etween on or about January 23, 2006, and on or about November 17, 2011.'" J.A. 49.

After conducting a hearing on the motion, the district court ordered the United States to produce certain material that had been referenced during the hearing, "including documents reflecting direct deposits, checks, and other means of financial transfer" from the SSA to Treacy. J.A. 143. The court also permitted the parties to file memoranda addressing this material.

Among the material submitted by the United States in response to the order are three letters the SSA sent to Treacy tending to show that he contacted the SSA in 2010 and 2011 to change the manner in which he received payment from K.G.'s

6

account. In one letter, dated June 14, 2010, the SSA informed Treacy that his benefits payments would be paid by physical check rather than direct deposit. Concerning this letter, the United States explained that "[a]ccording to usual processes, this change was initiated by [Treacy] through contact to the SSA and use of K.G.'s Social Security account number from which he was drawing." J.A. 147. Responding to this assertion, Treacy asserted that whether he initiated the contact "is of no consequence" because the alleged contact did not include his use of K.G.'s social security number. J.A. 151-52. However, Treacy admitted that if he had used K.G.'s social security number to initiate the change, "the government would have a stronger argument." J.A. 152.

The foregoing makes one important point obvious. Treacy's assertion during the pretrial stage that he had used K.G.'s social security number only once (in January 2006) was contradicted by both the Indictment allegations and the United States' forecast of the trial evidence. Without addressing this point, the district court denied the motion to dismiss Counts 3 and 5 based on the continuing offense doctrine. The court reasoned that because the essential elements of both § 1028(A) charges (Counts 3 and 5) include underlying predicate felonies (Counts 2 and 4), and because both of those predicate felonies

7

are continuing offenses, the § 1028(A) charges "are themselves properly construed as continuing offenses." J.A. 171.

The case proceeded to trial and the jury convicted Treacy on Counts 2-5. During trial, the United States presented the expert testimony of Pamela Tomlinson about basic SSA functions and procedures. Ms. Tomlinson confirmed the United States' pretrial assertion that Treacy would have been required to use K.G.'s social security number in 2010 and 2011 to effect changes in the account payment method. The district court subsequently summarized this testimony in a post-trial order:

> [T]he evidence at trial established that after he began receiving benefits on K.G.'s record, Treacy requested certain changes in those benefits. Ms. Tomlinson testified that Treacy would have been required to provide K.G.'s social security number as a means of identifying the account from which he was drawing benefits in order to make those changes. Treacy's argument that he only used K.G.'s identifying information during the pre-interview process at the direction of the claims representative is inaccurate.

J.A. 951. The United States also presented evidence supporting its pretrial assertion that Treacy used K.G.'s social security number each time the SSA paid benefits to him. Treacy did not raise the statute of limitations issue either at trial or in his post-trial Rule 29 motion for judgment of acquittal.

II

On appeal, Treacy reiterates his argument that aggravated identity theft is not a continuing offense. For that reason, he

8

contends that the district court erred by denying his pretrial motion to dismiss Counts 3 and 5, and he asks us to set aside his convictions on those counts. Without deciding the continuing offense issue, we will affirm the convictions for other reasons.

It is important to bear in mind the procedural context in which the statute of limitations issue comes before us. Treacy moved before trial (and at no other time) to dismiss Counts 3 and 5 of the Indictment. At that stage of a criminal case, the indictment allegations are presumed to be true, and the motion should not ordinarily be used as a vehicle to test the sufficiency of the evidence behind the allegations. United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014).

However, as we have noted, Treacy put forward a version of facts in which he claimed to have used K.G.'s social security number only one time in January 2006, and that assertion does not comport with the allegations of the Indictment, which charge that he committed aggravated identity theft "[b]etween on or about January 23, 2006, and on or about November 17, 2011." See J.A. 16-17. The United States made this point during the pretrial motion proceeding, but it appears to have been overlooked when the parties and the court focused on the technical aspects of the continuing offense issue.

In United States v. Engle, 676 F.3d 405 (4th Cir. 2012), we were presented with a similar set of circumstances. There, the

9

defendant – who was being prosecuted in the Eastern District of Virginia – moved before trial to dismiss one count of the indictment on venue grounds, arguing in part that the alleged illegal activity occurred only in Pennsylvania. The district court denied the motion, finding venue to be proper because the alleged crime was a continuing offense that began in Pennsylvania but continued into the Eastern District of Virginia. The defendant challenged that ruling on appeal.

Although we eventually addressed the district court's continuing offense ruling, we initially affirmed the denial of the dismissal motion on a more basic ground. We explained that because the defendant moved to dismiss the count before trial, "his motion was a challenge to the sufficiency of the indictment, which is ordinarily limited to the allegations contained in the indictment." Id. at 415. Continuing, we observed that a district court may dismiss an indictment before trial "where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." Id. (citation and internal quotation marks omitted). Accordingly, we stated that to warrant dismissal for improper venue, the defendant "was required to demonstrate that the allegations therein, even if true, would not establish venue." Id. Applying those principles, we concluded that because the government

10

alleged that the defendant had committed crimes "in the Eastern District of Virginia and elsewhere," the indictment "clearly designate[d] 'the Eastern District of Virginia and elsewhere' as the location of [his] illegal acts." Id. at 416. We therefore held that the motion to dismiss on venue grounds should have been denied for that reason.

Engle dealt with venue and this case involves the statute of limitations, but that difference is inconsequential. Here, as in Engle, Treacy challenged the sufficiency of the Indictment before trial. Properly considered, Treacy bore the burden of establishing that the Indictment allegations, even if true, do not establish that the crimes charged in Counts 3 and 5 are timely. This is a burden that Treacy could not have met because the United States plainly alleged that he committed aggravated identity theft (as charged in Counts 3 and 5) between January 2006 and November 2011. Based on these allegations, those alleged crimes are within the five-year statute of limitations, and the motion should have been denied on that basis.

To be sure, we recognized in Engle that a district court may look beyond the indictment allegations to decide a pretrial dismissal motion in the limited circumstance "'where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts.'" Id. at 416 n.7 (quoting United

11

States v. Weaver, 659 F.3d 353, 356 n.* (4th Cir. 2011)). Here, after conducting a hearing on the dismissal motion, but before ruling, the district court requested material from the United States pertaining to the statute of limitations. Whether this post-hearing procedure comports with the circumstance we recognized in Engle is doubtful, but we note in any event that at least some of the material submitted by the United States essentially confirms the Indictment allegations regarding timeliness. Specifically, the three letters the SSA sent to Treacy – which reflect changes in the manner that he received payment from K.G.'s account - tend to show that he contacted the SSA in 2010 and 2011 to effect the changes, and in doing so he would have been required to use K.G.'s social security number.

Treacy acknowledged below that if he had used K.G.'s social security number after January 2006, the statute of limitations would have started anew each time he used it. However, Treacy disputed the United States' assertion that he used K.G.'s social security number again, and he therefore argued that whether he initiated contact with the SSA "is of no consequence." Of course, Treacy is not entitled to the benefit of his version of the facts at the pretrial stage, and his disagreement about the facts of the case amply reinforces the general inappropriateness of deciding pretrial dismissal motions of this sort on factual matters beyond the indictment allegations.

12

Treacy's motion to dismiss should therefore have been denied in accord with our Engle decision. In addition, regardless of what transpired before trial, the United States presented evidence during trial tending to establish that Treacy used K.G.'s social security number in 2010 and 2011, well within the limitations period. As the district court stated while summarizing the trial evidence, "Treacy's argument that he only used K.G.'s identifying information during the pre-interview process at the direction of the claims representative is inaccurate." J.A. 951. Therefore, to the extent that factual matters beyond the allegations of the Indictment bear on the issue, those facts refute Treacy's assertion that the prosecution is untimely, and this provides another basis to affirm his convictions. See generally United States v. Han, 74 F.3d 537, 539 (4th Cir. 1996) (recognizing that we can consider trial evidence in reviewing the denial of a pretrial suppression motion).

III

Based on the foregoing, we affirm Treacy's convictions on Counts 3 and 5.

AFFIRMED